UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DOUGLAS ANTONIO LEE, | ) |
| | ) |
| Plaintiff, | )   No. 4:22-CV-112 RLW |
| | ) |
| v. | ) |
| | ) |
| TIMOTHY DURBIN, | ) |
| | ) |
| Defendant. | ) |

## **MEMORANDUM AND ORDER**

This matter is before the Court on Defendant Timothy Durbin's Motion for Summary Judgment. (ECF No. 23). Plaintiff Douglas Antonio Lee ("Lee") brought this suit for damages against Sergeant Timothy Durbin ("Durbin") under 42 U.S.C. § 1983 for alleged violations of his rights. This matter is fully briefed and ready for disposition.[1] For the reasons stated herein, the Court grants Durbin's Motion for Summary Judgment.

## **BACKGROUND**[2]

On September 14, 2021, Plaintiff Antonio Lee was booked into the Phelps County Jail ("PCJ"). (Defendant Timothy Durbin's Statement of Uncontroverted Material Facts ("DSUMF"), ECF No. 24, ¶ 1). Lee was placed in the part of the PCJ known as the "Annex" for

---

[1] On December 5, 2022, Durbin filed his Reply Memorandum (ECF No 36) and his Additional Statement of Material Facts (ECF No. 37). Because Durbin filed his Additional Statement of Material Facts in conjunction with his Reply, Lee did not have an opportunity to respond to those new facts. Therefore, the Court does not consider Defendant's Additional Statement of Material Facts (ECF No. 37) in its decision.

[2] Defendant Timothy Durbin's Statement of Uncontroverted Material Facts (ECF No. 24) is deemed admitted for purposes of summary judgment because Lee did not specifically controvert them in a response to the statement of material facts. *See* E.D. Mo. L.R. 4.01(E); *Holloway v. Union Pac. R.R. Co.*, 762 F. App'x 350, 352 (8th Cir. 2019); *Roe v. St. Louis Univ.*, 746 F.3d 874, 881 (8th Cir. 2014).

disciplinary reasons. (DSUMF, ¶ 2). On November 3, 2021, at approximately 5:20 p.m., Durbin was escorting another inmate to the Annex, when he noticed that Lee and others yelling at him. (DSUMF, ¶¶ 3, 4).

Upon investigation, Lee told Durbin that a piece of metal was in Lee's right hand. (DSUMF, ¶ 5). While he removed Lee from the pod, Durbin unholstered his Taser, but he reholstered it once Lee was safely out of the pod. (DSUMF, ¶ 6). Durbin saw a metal splinter protruding from the right side of Lee's hand. (DSUMF, ¶ 7). Durbin brought Lee to the Annex control room and had him sit on the floor with the help of another correction officer. (DSUMF, ¶ 8). Since the jail nurse had departed for the day, Durbin extracted the splinter from Lee's hand. (DSUMF, ¶ 9). The splinter was less than 1/16 in diameter and only ¾ inches long. (DSUMF, ¶ 10). Durbin applied a band-aid to Lee's hand and returned him to his cell. (*Id*.) Durbin then informed the on-call doctor, Dr. Kessler, of the incident and treatment. (DSUMF, ¶11). Dr. Kessler instructed Durbin to contact the nurse the following day to determine if Lee's tetanus vaccination was current. (*Id*.) On the same day at 5:27 p.m., Durbin emailed the jail supervisor and nurse Jennifer Worley with Dr. Kessler's recommendations. (DSUMF, ¶ 12).

On November 4, 2021, at 8:40 a.m. Lee was seen by the jail nurse, who observed a small puncture wound with redness. (DSUMF, ¶ 13). The jail nurse cleaned the wound, replaced Lee's bandage, and arranged for Lee to receive a tetanus shot the following day. (*Id*.) The nurse provided Lee with a 10-day supply of Amoxicillin, instructed Lee to keep the wound clean and dry, and told him to follow up if symptoms worsened. (DSUMF, ¶ 14). On December 25, 2021, Lee refused medication due to a "possible delay in wound healing." (DSUMF, ¶ 15).

On January 28, 2022, Lee filed a Prisoner Civil Rights Complaint under 42 U.S.C. § 1983 (ECF No. 1) and an Amended Complaint on March 3, 2022. (ECF No. 4). Lee alleged that

Durbin did not call medical support when Lee had a metal splinter. Instead, Durbin "put his tazer up" and "for no reason, twisted [Lee's] wrist and made it bleed[.]" (ECF No. 4, p. 3). Then Durbin "grabbed a dirty tool and snatched the metal out without calling medical for an hour[.]" (*Id*.) As a result, Lee claims that he had to get a tetanus shot, had "scratches on [his] arms and back" and he is "almost positive something [is] still in [his] hand." (ECF No. 4 at 4). The only claims remaining in this lawsuit are Lee's §1983 claims against Durbin for excessive force and deliberate indifference to Lee's medical needs. (ECF No. 6 at 8-9).

## STANDARD OF REVIEW

The Court may grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Citrate*, 477 U.S. 317, 322 (1986); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011). The substantive law determines which facts are critical and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Only disputes over facts that might affect the outcome will properly preclude summary judgment. *Id.* Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.*

A moving party always bears the burden of informing the Court of the basis of its motion. *Celotex Corp.*, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 248. The nonmoving party may not rest upon mere allegations or denials of his pleading. *Id.*

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in his favor. *Celotex Corp.*, 477 U.S. at 331. The Court's function is not to weigh the evidence but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249.

### DISCUSSION

The Eighth Amendment prohibits the infliction of cruel and unusual punishment. "[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney,* 509 U.S. 25, 31 (1993); *Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011). Although the Eighth Amendment has no application until there has been a "formal adjudication of guilt" the Fourteenth Amendment gives state pretrial detainees—just as the Fifth Amendment gives federal pretrial detainees—rights which are "at least as great as the Eighth Amendment protections available to a convicted prisoner." *City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244 (1983). "The Constitution affords greater protection to a pretrial detainee compared to a convicted inmate in the sense that '[d]ue process requires that a pretrial detainee not be punished.'" *Walton v. Dawson*, 752 F.3d 1109, 1117 (8th Cir. 2014) (quoting *Bell v. Wolfish,* 441 U.S. 520, 535 n. 16 (1979)).

**A. Excessive Force**

The Due Process Clause of the Fourteenth Amendment protects pretrial detainees from "the use of excessive force that amounts to punishment." *Graham v. Connor,* 490 U.S. 386, 395 n. 10, (1989) (citing *Bell,* 441 U.S. at 535–39). Because the Due Process Clause "prohibits *any* punishment of a pretrial detainee, be that punishment cruel-and-unusual or not," *Edwards v. Byrd,* 750 F.3d 728, 732 n. 2 (8th Cir. 2014) (emphasis in original), the Court must determine

whether the defendant's purpose in using force was "to injure, punish or discipline" the detainee, *id.* at 732 (quoting *Putman v. Gerloff,* 639 F.2d 415, 421 (8th Cir. 1981)). "An official's use of force does not amount to punishment in the constitutional sense if it is 'but an incident of some other legitimate governmental purpose.'" *Jackson v. Buckman*, 756 F.3d 1060, 1067 (8th Cir. 2014) (citing *Bell,* 441 U.S. at 538 (providing an analogous rule in the context of a conditions-of-confinement challenge brought by pretrial detainees). Indeed, "conduct that is merely negligent or grossly negligent does not implicate the protections of the Due Process Clause." *Id.* (citing *Daniels v. Williams,* 474 U.S. 327, 328 (1986); *Clemmons v. Armontrout,* 477 F.3d 962, 966 (8th Cir. 2007); *Wilson v. Lawrence Cnty.,* 260 F.3d 946, 955 (8th Cir. 2001)). "The objective indicia relevant to the excessive-force analysis under the Fourth Amendment guide this due-process inquiry." *Id*. (citing *Andrews v. Neer,* 253 F.3d 1052, 1060–61 & 1061 n. 7 (8th Cir. 2001) (setting forth relevant factors, including "the need for the application of force, the relationship between the need and the amount of force that was used, the extent of the injury inflicted, and whether [the force] was used for punishment or instead to achieve a legitimate purpose"); *see generally Kingsley v. Hendrickson,* 744 F.3d 443, 449–53 (7th Cir. 2014)).

Here, Lee alleges that Durbin pulled his Tazer on Lee "for no reason" " and he had "to get down on [his] knees with [his] hands out in front of [him] and get [Durbin] not to taze [him]." (ECF No. 4 at 11). Lee claims that Durbin grabbed his "injured hand and twisted it until it bleed [sic]." (*Id.*)³  Lee further alleges that was forced to sit on a "strap down chair" and on the floor … like some animal[.]"  (ECF No. 30 at 1)  Lee states that he was held down, while

---

³ In his opposition, Lee contends he the begged Durbin not to taze him.  (ECF No. 30 at 1). Lee maintains that "[t]he camera will show how Durbin grabbed [his] injured hand which was already hurting [him] and twisted it and held on and continued to cause me more pain and caused it to bleed for no reason."  (*Id.*)

Durbin "took it upon his self [sic] to hurt me more and grabbed a non sterile not medical tool with a dirty and used gloves on to remove the metal." (*Id.*)

The Court holds that Durbin's use of force was not excessive because his actions were not performed as an "unnecessary and wanton infliction of pain[.]" *Hudson v. McMillian*, 503 U.S. 1, 5 (1992). As noted by him, Durbin's choices were "not particularly good." (ECF No. 36 at 4). The nurse was not on duty at the time of Lee's injury. (DSUMF, ¶ 9). Had Durbin done nothing, then he would have potentially exposed himself to a claim for deliberate indifference to Lee's medical needs. (ECF No. 36 at 4). Rather, Durbin's alleged actions served a legitimate penological purpose to remove Lee from his cell and provide immediate, first aid care to Lee. *See Andrews,* 253 F.3d at 1060–61. Under the circumstances, the Court holds that the minimal force allegedly used by Durbin was reasonably necessary to maintain order and ensure treatment of Lee's hand.

Further, Lee's medical and jail records do not support a finding of excess force.[4] Pursuant to Eighth Circuit law, "the court may consider the degree of injury sustained 'insofar as it tends to show the amount and type of force used.'" *McAllister v. Dean*, No. 4:13CV2492 CEJ, 2015 WL 4647913, at *5 (E.D. Mo. Aug. 5, 2015) (quoting *Chambers v. Pennycook*, 641 F.3d 898, 906 (8th Cir. 2011); *cf. Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015) (degree of injury is factor to be considered in excessive force claim brought under Fourteenth Amendment)); *see also Fondren v. White*, No. 4:18CV1102 JCH, 2020 WL 4260663, at *6 (E.D. Mo. July 24, 2020) (quoting *McAllister*, 2015 WL 4647913, at *5) ("Plaintiff further did not complain about [his eye, elbow or thumb] during his stays at the County Jail or MPC, despite having regular

---

[4] Despite his promise to provide camera evidence to support his excessive force claim, Lee has not set forth any evidence that would support any finding other than that Durbin's actions were reasonable and appropriate. Lee has not demonstrated that he requested camera footage or that such footage was not provided to him upon request.

access to doctors and nurses. Under these circumstances, the Court finds that 'any injuries that plaintiff sustained as a result of his encounter with [defendants] were minor and support a conclusion that the force used was minor.'").

In the days following November 3, 2021, Lee had several medical visits and treatments. (DSUMF, ¶ 16). However, none of the medical documentation mentions any injuries to Lee other than his splinter wound. (*Id.*) Likewise, none of Lee's inmate grievance forms from that time mention excessive force by Durbin, other than a single reference to Durbin holding Lee down to remove the splinter. (*Id.*)[5] "An inmate who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim." *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010); *Carlisle v. Long*, No. 5:18-CV-05056, 2019 WL 1338907, at *13 (W.D. Ark. Mar. 25, 2019). Thus, the Court holds that Lee's lack of complaints to medical professionals or grievances to jail staff indicates that any injuries to Lee were *de minimis* and cannot support a conclusion that Durbin used excessive force. *See Whitley v. Albers,* 475 U.S. 312, 327 (1986) (quoting *Estelle v. Gamble,* 429 U.S. 97, 105 (1976)) (The Eighth Amendment's prohibition of "cruel and unusual" punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort "'repugnant to the conscience of mankind.'"). Based upon the reasonableness of the force applied and Lee's lack of injury, the Court grants Durbin's Motion for Summary Judgment on Lee's excessive force claim.

**B. Deliberate Indifference**

---

[5] Lee admits that he did not file a grievance related to his injuries but claims it is "because [he] did not want to make them mad at me or cause them to nick pick at me." (ECF No. 4 at 6).

As a pretrial detainee, Lee's right to medical care arises under the Due Process Clause of the Fourteenth Amendment. *See Jackson v. Buckman*, 756 F.3d 1060, 1065 (8th Cir. 2014); *Vaughn v. Greene Cnty.,* 438 F.3d 845, 850 (8th Cir. 2006). Although Lee's claim is rooted in the Fourteenth Amendment, the Court applies the deliberate-indifference standard that governs claims brought by convicted inmates under the Eighth Amendment. *See id.; Fourte v. Faulkner Cnty.,* 746 F.3d 384, 387 (8th Cir. 2014). "To prevail on an Eighth Amendment claim for deprivation of medical care, an inmate must show that the prison official was deliberately indifferent to the inmate's serious medical needs." *Schaub*, 638 F.3d at 914 (citing *Coleman v. Rahija,* 114 F.3d 778, 784 (8th Cir. 1997)). This requires a two-part showing that (1) the inmate suffered from an objectively serious medical need, and (2) the prison official knew of the need yet deliberately disregarded it. *Id.; see also Farmer v. Brennan,* 511 U.S. 825, 837 (1994); *Estelle,* 429 U.S. at 105. A serious medical need is "one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Camberos v. Branstad,* 73 F.3d 174, 176 (8th Cir. 1995). An official such as Durbin may be held liable if he knows that an inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. *Farmer,* 511 U.S. at 847; *Schaub*, 638 F.3d at 916.

In his opposition to Durbin's Motion for Summary Judgment, Lee argues that "Durbin displayed deliberate indifference by every action he took and did not take throughout this entire incident." (ECF No. 30 at 2). Lee argues that Durbin should have "called medical or sent [him] to the hospital" and it was "very reckless" of him not to do this. (*Id*.) Lee contends that Durbin was deliberately indifferent "because of Durbin's lack of care and concern; because of Durbin treatment me like a 'convict, inmate, offender' instead of a detainee; instead of Durbin acting as

a professional who holds a 'sgt.' position." (*Id*.)  He claims, without any medical support, that he has the "threat of one day possibly loosing [sic] use of my right hand[.]"  (ECF No. 30 at 3). He asserts that he had to get his hand cut open to remove the metal from his hand.  Even so, he claims that a piece of metal remains in his hand and "may be there forever!"  (ECF No. 30 at 4). Lee admits that he received a tetanus shot the day after his injury, but claims he did not receive any other follow up medical care.  (ECF No. 30 at 1).

The Court holds that Lee has not demonstrated that he faced a substantial risk of serious harm or that Durbin did not take reasonable measures to abate it. *Farmer,* 511 U.S. at 847; *Schaub*, 638 F.3d at 916.  As stated, Lee alleges that his serious medical condition is the metal splinter.  The Court holds that a metal splinter, particularly one as small as that injured Lee, does not constitute a serious medical condition as a matter of law. *See, e.g., Martin v. Gentile*, 849 F.2d 863, 871 (4th Cir. 1988) (pretrial detainee who suffered from a cut over his eye, a one-quarter inch splinter of glass embedded in his palm, and bruises did not demonstrate a claim for deliberate indifference to a medical need even if a delay in taking him to the hospital was deliberate). By comparison, Courts have determined that bloody noses do not constitute a serious medical condition. *See Killian v. Corizon Healthcare LLC*, No. 4:21-CV-1432 JCH, 2022 WL 705526, at *5 (E.D. Mo. Mar. 8, 2022) (fainting, falling, and having a bloody nose do not constitute a serious medical condition under a deliberate indifference claim); *Bell v. Voight,* No. CIV. 14–4111, 2015 WL 5257025, at *8 (D.S.D. Sept. 9, 2015) (holding that a bloody nose and bruises after a fight "is not sufficient to put defendants on notice that he had a broken facial bone" such that there could be a finding of deliberate indifference under the Eighth Amendment); *Smith v. Brown,* No. 4:16-CV-04014-LLP, 2018 WL 4658223, *19 (D.S.D. Sept. 27, 2018) (no detrimental effect in delaying plaintiff's visit to Health Services by five days when

plaintiff had a bloody nose, a small cut across the bridge of his nose, and the nose slightly deviated to the right); *see also Lockett v. Surardini,* 526 F.3d 866, 876 (6th Cir. 2008) (minor lacerations and cuts and soreness in two fingers did not constitute serious medical needs); *Blackmore v. Kalamazoo County,* 390 F.3d 890, 898 (6th Cir. 2004) (citing cases involving unobvious and minor injuries that did not support Eighth Amendment claims); *Wesson v. Oglesby,* 910 F.2d 278, 284 (5th Cir. 1990) (swollen wrists with some bleeding did not constitute a serious medical need). Lee has not demonstrated that the mild swelling and "small puncture" wound experienced as a result of the removal of the metal splinter constitute a serious medical need as a matter of law. *See* ECF No. 24-1 at 55.

Further, the Court holds that Durbin's actions in light of Lee's injury (the splinter) were adequate under the circumstances. *See Perez v. Fenoglio*, 792 F.3d 768, 777 (7th Cir. 2015) (citing *Farmer,* 511 U.S. at 832; *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011) ("Prison officials must provide inmates with medical care that is adequate in light of the severity of the condition and professional norms."). Under the subjective prong, Lee must show that an official "actually knew of but deliberately disregarded his serious medical need." *Scott v. Benson,* 742 F.3d 335, 340 (8th Cir. 2014). This showing requires a mental state "akin to criminal recklessness." *Id.* (quoting *Gordon v. Frank,* 454 F.3d 858, 862 (8th Cir. 2006)). Consequently, Lee must show "more than negligence, more even than gross negligence" to evince deliberate indifference. *Fourte,* 746 F.3d at 387 (quoting *Jolly v. Knudsen,* 205 F.3d 1094, 1096 (8th Cir. 2000)). An inmate must demonstrate that a defendant's actions were "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." *Dulany v. Carnahan,* 132 F.3d 1234, 1240–41 (8th Cir. 1997); *Jackson v. Buckman,* 756 F.3d 1060, 1066 (8th Cir. 2014). "Deliberate indifference may be demonstrated by prison guards who intentionally deny

or delay access to medical care or intentionally interfere with prescribed treatment, or by prison doctors who fail to respond to prisoner's serious medical needs." *Dulany*, 132 F.3d at 1239 (citing *Estelle,* 429 U.S. at 104–05).

Durbin's actions demonstrate that he did not act with deliberate indifference. *See Estelle*, 429 U.S. at 104. Lee admits that Durbin responded to his complaints and that he removed the splinter from his hand. Lee's only complaints regarding the medical treatment received are that Durbin should have sought treatment for Lee from a medical professional and that Durbin used a "non sanitary" cloth in removing the splinter. Even if these criticisms are well-taken, they do not make Durbin's actions deliberately indifferent. Lee's criticisms are do not demonstrate that Durbin intentionally denied or delayed access to medical care. *See Dulany*, 132 F.3d at 1239. Rather, Durbin responded to Lee's alleged medical need in a reasonable way considering the lack of medical staffing at the time. Indeed, even after Durbin addressed Lee's immediate medical concern, Durbin consulted a medical doctor and scheduled follow-up care. The Court finds that, as a matter of law, Durbin's actions were not deliberately indifferent to Lee's medical needs and grants summary judgment in favor of Durbin.[6]

### C. Qualified Immunity

The qualified immunity doctrine "shields government official[s] from civil damage liability for discretionary action that 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *De La Rosa v. White*, 852 F.3d 740, 745 (8th Cir. 2017) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). In determining whether an officer is entitled to qualified immunity, the Court employs a two-step

---

[6] Although Lee argues that he has not received any medical follow-up medical care other than a tetanus shot ("no follow ups or nothing"), the Court finds that this has no bearing on Durbin's liability. *See* ECF No. 30 at 1, ¶ 8.

analysis that asks: (1) whether the alleged facts, when viewed in the light most favorable to the plaintiff, demonstrate that the official's conduct violated a constitutional right; and (2) whether the constitutional right being asserted is clearly established. *Wallingford v. Olson*, 592 F.3d 888, 892 (8th Cir. 2010) (cited cases omitted). The Court may address either question first. *Boude v. City of Raymore*, 855 F.3d 930, 933 (8th Cir. 2017) (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)). "If either question is answered in the negative, the public official is entitled to qualified immunity." *Norris v. Engles*, 494 F.3d 634, 637 (8th Cir. 2007) (quoted case omitted). "To avoid pretrial dismissal, a plaintiff must present facts showing the violation of a constitutional right that was clearly established at the time of defendant's act." *De La Rosa*, 852 F.3d at 743.

As discussed herein, the Court finds that Lee has not demonstrated that Durbin violated any of Lee's constitutional rights based upon Durbin's excessive use of force or deliberate indifference to Lee's medical needs. Likewise, Lee "pointed the Court to no case or set of cases that made it clear that every reasonable official would have known that the conduct at issue in the circumstances at issue was unlawful." *Leonard v. St. Charles Cnty.*, 570 F. Supp. 3d 707, 719 (E.D. Mo. 2021); *see Kingsley v. Hendrickson*, 576 U.S. 389, 400 (2015) (noting "an officer enjoys qualified immunity and is not liable for excessive force unless he has violated a clearly established right, such that it would have been clear to a reasonable officer that his conduct was unlawful in the situation he confronted" (internal alterations and quotations omitted)). Therefore, the Court holds Durbin is entitled to qualified immunity as a matter of law. On this additional basis, the Court grants summary judgment in favor of Durbin.

- 13 -

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Timothy Durbin's Motion for Summary Judgment. (ECF No. 23) is **GRANTED**.

An appropriate Judgment is filed herewith.

Dated this 12th day of December, 2022.

*Ronnie L. White*

**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**